UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| ANTHONY R. BOYKIN, | ) | 3:06-CV-00011-PMP (RAM) |
| Plaintiff, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| vs. | ) | OF U.S. MAGISTRATE JUDGE |
| J. BAINBRIDGE, et al., | ) | |
| Defendants. | ) | |
| _____ | ) | |

This Report and Recommendation is made to the Honorable Philip M. Pro, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion to Dismiss (Doc. #15). Plaintiff opposed the motion and made a motion for judgment on the pleadings (both Doc. #22). Defendant replied to Plaintiff's opposition (Doc. #24) and also opposed Plaintiff's motion for judgment on the pleadings (Doc. #25).

BACKGROUND

Plaintiff was formerly an inmate at Ely State Prison. (Doc. #15).

In Count I of Plaintiff's complaint he alleges that on March 14, 2005 he was asked to sign some documents relating to tuberculosis (TB) and informed that he had tested positive for TB years ago. (Doc. #1). Plaintiff alleges that Defendants were deliberately indifferent to Plaintiff's medical needs by not providing Plaintiff with medication to prevent Plaintiff from developing active TB, and by not x-raying Plaintiff to examine his lungs for possible effects of TB. (Id.)

/ / /

1    In Count II Plaintiff alleges that he was served dietloaf rather than his regular meals on

2    October 17 and 18, 2005 and that he was not served his regular breakfast on October 19, 2005. (Id.)

3    Plaintiff alleges that his due process rights were violated because Defendants Hunt, Lightly,

4    Williams, Perkins, Otero, Messick, McDaniel, Endel, Brooks, Whorton, Cox, MacArthur, Janew,

5    and Does #1-20 violated Administrative Regulation 732 by placing Plaintiff on dietloaf.  (Id.)

6    Plaintiff further alleges that Defendants Whorton, Cox, McDaniel, Brooks and Endel failed to

7    supervise their subordinates in violation of Plaintiff's rights.  (Id.)

8    In Count III Plaintiff alleges that on October 26, 2005 Defendant Boyton was "subtly

9    choking" him. (Id.) He also alleges that Defendant Horsely violated his Eighth Amendment right

10   to be free from cruel and unusual punishment when he allegedly sadistically and maliciously placed

11   his knee in Plaintiff's back and Plaintiff's face.  (Id.)  Plaintiff further alleges that Defendants

12   Bainbridge, Clark, Boyton, Smith, Monroe, Horsely, and Hammons violated his Eighth Amendment

13   rights by allowing Defendant Boyton to "sadistically bend [P]laintiff's right hand and thumb causing

14   extreme pain and busting the stitches in [P]laintiffs right [sic] thumb" and that his rights were even

15   further violated when Defendant Hammons denied Plaintiff medical treatment after he complained

16   about his thumb.[1]  (Id.)  Next, Plaintiff alleges that his Eighth Amendment rights were violated

17   when Defendants (unclear which Defendants he means) ripped his pants off and forced him to walk

18   faster than the leg restraints permitted.   (Id.)  Next, Plaintiff alleges that Defendants committed

19   assault against him under NEV. REV. STAT. 200.371 and battery under NEV. REV. STAT. 200.471. (Id.)

20   Plaintiff also alleges that Defendant Falgy violated his Eighth Amendment rights by ordering that

21   Plaintiff not be served dinner.  (Id.) Finally, Plaintiff alleges that all the acts alleged in Count III

22   were done in retaliation for Plaintiff having previously pursued a lawsuit against some of the

23   Defendants.

24   In Count IV Plaintiff alleges that on November 22, 2005 Defendant Clark wrote a "notice

25   of charges" against Plaintiff after Plaintiff threatened to sue the Defendants (again, unclear which

26
27          [1]Plaintiff also sometimes refers to a "Defendant Lisa." (Doc. #1).  The court assumes that he means
     Defendant Lisa Hammons.

28                                                      2

Defendants he means).  (Id.)  Plaintiff alleges that in doing so Defendant Clark violated his First Amendment right to petition the government for redress of grievances and his right to freedom of speech. (Id.) This Count also includes some accusations against Defendant Endel, including that he is "nefarious" and that he conceals the improper acts of his subordinates.  (Id.)  Plaintiff, does not, however, indicate what right of his Defendant Endel allegedly violated by doing so.  (Id.) Plaintiff also alleges in this count that Defendant Book violated his due process rights by refusing to allow Plaintiff to question the witness against him or to present evidence.

In Count V Plaintiff alleges that Defendants Brown, McDaniel, Endel, Brooks, Cox, Whorton, and Does 1-10 violated Plaintiff's right to due process by allegedly "stealing [P]laintiff's money" that he received from a settlement in another case in order to pay the public defender's office for the cost of defending Plaintiff.  (Id.)  Plaintiff alleges that these actions were done in retaliation for Plaintiff having filed a law suit.  (Id.)

DISCUSSION

A.     Standard for Summary Judgment

Where a motion to dismiss relies on matters outside the pleadings the court may consider it in accordance with Fed. R. Civ. P. 56.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  Northwest Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996).  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  FED.R.CIV.P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED.R.CIV.P. 56(c); Beyene v. Coleman Sec. Serv., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. Anderson, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. Id. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. Id.

Although allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyer, Haines v. Kerner, 404 U.S. 519 (1972), sweeping conclusory allegations will not suffice. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Further, the court must defer to State prison officials regarding day-to-day prison operations. Turner v. Safley, 482 U.S. 78, 84-85 (1986)(holding that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform ..." and additional deference to prison authorities is due where state penal system is involved). In order to defeat summary

1   judgment the plaintiff must demonstrate the  regulations at issue are not reasonably related to

2   legitimate penological interests.  Bahrampour v. Lampert, 356 F.3d 969, 973 (9th Cir. 2004).

3   B.      Effect of settlement agreement on Plaintiff's current claims

4           Defendants argue that "the court lacks jurisdiction over Counts II, III, and IV of Plaintiff's

5   complaint, as these claims were previously litigated and settled between the parties," and as such

6   res judicata or collateral estoppel bar Plaintiff from litigating these claims a second time. Doc. #15.

7           A federal action may be barred by claim preclusion or res judicata where the earlier lawsuit

8   involved the same claim sued upon in the present action, involved the same parties or person in

9   privity of interest with them, and resulted in a final judgment on the merits.  Blonder-Tongue

10  Labratories, Inc. V. University of Ill. Found., 402 U.S. 313, 323-24 (1971).

11          Here, however, the court need not reach the question of whether the dismissal entered after

12  the settlement agreement constitutes a final judgment on the merits because the current claims do

13  not appear to involve the same claims sued upon nor the same claims discussed in the settlement

14  agreement.  Defendants' motion asserts that Counts II, III, and IV are based  on alleged incidents

15  that occurred on October 17, 2005.  Id.  Plaintiff previously entered into a settlement agreement

16  concerning a lawsuit he brought that concerned incidents allegedly occurring in March, September,

17  October, and November of 2004. See Doc. #15, Exh. F.  As part of settling those claims for valuable

18  consideration, Plaintiff also waived his right to pursue two grievances that were then pending.  Id.

19  Those grievances were not the subject of that lawsuit, but the court speculates that Plaintiff agreed

20  to dismiss them as part of the settlement negotiations.  The first of these grievances settled by the

21  agreement concerned an alleged incident that occurred in July of 2005 and regarding which Plaintiff

22  filed a grievance (Log number 2005-24-8508) on August 1, 2005.  More importantly, the second

23  grievance settled by the agreement regards an alleged incident that occurred on October 17, 2005

24  "wherein Plaintiff alleges that his right thumb was injured after Plaintiff had placed his arm outside

25  the food slot of his cell ... [and] Correctional Officer Matthew Bauman kicked the food slot closed,

26  causing injury to Plaintiff's right thumb and hand."  Id.  The settlement agreement sets forth the

27  grievance log number of this October claim as "2005-24-1237."

28
                                                5

The only one of Plaintiff's claims now before the court that mentions the date of October 17, 2005 is Count II. Doc. #1. However, in Count II Plaintiff discusses allegations different from those described in the settlement agreement. Specifically, in Count II Plaintiff alleges that Defendants violated his rights by placing him on dietloaf. Id. In his opposition (Doc. #22) Plaintiff attaches as an exhibit a copy of a "grievance printout" concerning his dietloaf complaints. Doc. #22 at 18. The grievance number listed on that exhibit is "2005-24-13776", a number that does not match the number given to the grievance resolved in the settlement agreement. Id. Thus, it appears that these two grievances neither concern the same facts nor are labeled with matching grievance numbers, leading the court to conclude that they, in fact, concern different grievances.

Next, contrary to Defendants assertions, Counts III and IV do not concern incidents allegedly occurring on October 17, 2005. Count III concerns incidents allegedly occurring on October 26, 2005 and Count IV concerns incidents allegedly occurring on November 22, 2005. The settlement agreement does not mention these dates at all. The court finds nothing in the settlement agreement, executed on November 28, 2005, suggesting that Plaintiff agreed to waive all then-pending claims against NDOC and its various agents. Clause 3.1 of the agreement specifically limits the settlement to "the 2004 incidents" (the subject of that lawsuit), and the "July 2005 incident and the October 2005 incident", all of which were particularly described earlier in the agreement in the "recitals" section.

Thus, the settlement agreement does not function as a bar to these current claims.

B. Qualified Immunity

Under certain circumstances state officials are entitled to qualified immunity when sued in their personal capacities. Carey v. Nevada Gaming Control Board, 279 F.3d 873, 879 (9th Cir. 2002). When a state official reasonably believes his or her acts were lawful in light of clearly established law and the information they possessed, the official may claim qualified immunity. Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 706 (9th Cir. 1985). Where "the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier v. Katz, 533 U.S. 194, 202 (2001).

1    In analyzing whether the defendant is entitled to qualified immunity, the court must consider

2    two issues.  First, the court must make a threshold inquiry into whether the Plaintiff alleges

3    deprivation of a constitutional right.  Hope v. Pelzer, 536 U.S. 730, 736 (2000); Saucier, 533 U.S. at

4    201.  If no constitutional violation occurred, the court need not inquire further.  Saucier, 533 U.S.

5    at 201.  If a constitutional violation did occur then the court must next establish whether the right

6    was clearly established at the times of the alleged violation such that the official could have

7    reasonably, but mistakenly, believed that his or her conduct did not violate a clearly established

8    right.  Saucier, 533 U.S. at 202.

9    <u>Deliberate Indifference to Serious Medical Needs</u>

10    Here, Plaintiff has not alleged the deprivation of a constitutional right in Count I.  Although

11    inmates' right to necessary medical care is well established, see Estelle v. Gamble, 429 U.S. 97, 105

12    (1976), inmates do not have a right to any and all treatment desired or demanded.  See, e.g., Franklin

13    v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981)(mere difference in opinion between treating official

14    and inmate-patient is not enough).  In order to make out a claim for deliberate indifference an

15    inmate must show that "deliberate indifference" to a "serious medical need."  Estelle, 429 U.S. 97.

16    "A serious medical need is present whenever the 'failure to treat a prisoner's condition could result

17    in further significant injury or unnecessary and wanton infliction of pain."  Clement v. Caballero,

18    298 F.3d 898, 904 (9th Cir. 2002), quoting Estelle, 429 U.S. at 104.  Here, Plaintiff complains that

19    he was not given medication to prevent him from developing TB and that he was not x-rayed to

20    examine his lungs for the effects of TB.  Plaintiff has failed to present any evidence, other than his

21    own unsupported contentions, that his condition was a serious condition.  Defendants' evidence

22    indicates that Plaintiff's TB was inactive and that he showed no signs or symptoms of active TB.

23    (Doc. #15-2, Exh. A; Doc. #24, Exh. A).  Plaintiff's claims amount to simply a difference in opinion

24    regarding the appropriate treatment.  As such, his claim is not Constitutionally cognizable and

25    Defendants are entitled to qualified immunity on this Count.  Because the court finds no deprivation

26    of a constitutional right, we need not reach the second part of the Saucier inquiry.  Saucier, 533 U.S.

27    at 202.  The motion for summary judgment on Count I should be <u>GRANTED</u>.

28

7

1    Plaintiff's allegations in Count III also include allegations of deliberate indifference.
2    Specifically, Plaintiff alleges that his rights were violated when Defendant Hammons denied Plaintiff
3    medical treatment after he complained about his thumb, which was allegedly re-injured during the
4    scuffle when his stitches "busted."  (Doc. #1).  The court finds that Plaintiff has alleged the
5    deprivation of a Constitutional right and that it was clearly established at the time of this incident
6    that failure to treat an inmate's wounds does not comport with the requirement of the Constitution.
7    As such, Defendant Hammons is not entitled to qualified immunity.

8    Defendants do not address this claim in their motion (Doc. #15), but do include the affidavit
9    of Debra Brooks, which includes the statement ""Lisa Hammons, R.N. attempted to evaluate Inmate
10   Boykin for any injuries cause by Inmate Boykin's uncooperative behavior." (Doc. #15-3, Exh. K).
11   A similar statement is included in the affidavit of Jerry Bainbridge. (Doc. #13-3, Exh. L).  Plaintiff
12   maintains in his affidavit that he was not provided any medical treatment for his thumb.  (Doc. 22,
13   affidavit of Anthony R. Boykin).  As such, disputed issues of material fact remain on this claim and
14   the motion for summary judgment should be <u>DENIED</u> as to Plaintiff's Count III deliberate
15   indifference claims.

16   Deprivation of Food

17   Plaintiff claims in Count II, however, do not state a Constitutional claim.  Although "[p]risons
18   have a duty to ensure that prisoners are provided adequate ... food ...", Johnson v. Lewis, 217 F.3d
19   726 (9th Cir. 2000), "the deprivation of food constitutes cruel and unusual punishment only if it
20   denies a prisoner the 'minimal civilized measures of life's necessities.'" Talib v. Gilley, 138 F.3d 211,
21   214 n.3 (5thCir. 1998)(quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  In Talib, the Fifth Circuit
22   affirmed the district court's finding that plaintiff's allegation that he was denied  fifty meals in five
23   months did not amount to a Constitutional deprivation.  Id.; cf. Cooper v. Sherriff, Lubbock County,
24   Texas, 929 F.2d 1078 (5th Cir. 1991)(where  plaintiff did state a claim where he alleged he was
25   continuously deprived of food for twelve consecutive days). Plaintiff has no protected liberty interest
26   in receiving a regular meal rather than dietloaf.  He was not denied food altogether, he was simply
27   denied the regular prison meal.  As such, neither his right to be free from cruel and unusual
28

8

punishment nor his due process rights (as he alleges for the first time in his opposition, Doc. #22) were violated. Likewise, any alleged failure by Defendants Whorton, Cox, McDaniel, Brooks and Endel for failure to supervise the subordinates who gave Defendant dietloaf, also fails to state a claim, because the underlying complaint lacks merit. Thus, the Defendants are entitled to qualified immunity. The motion for summary judgment on Count II should be <u>GRANTED</u>.

Further, Plaintiff's allegation in Count III regarding the alleged deprivation of food Plaintiff suffered at the hands of Defendant Falgy also fails to state a Constitutional claim. In accordance with the rationale and law set forth above, the court finds that Defendant Flagy is also entitled to qualified immunity on Count III. The motion for summary judgment should also be <u>GRANTED</u> as to this particular section of Count III.

Apart from the claims already set forth above, in Count III Plaintiff also alleges (1) that Defendants used excessive force against him in violation of his Eighth Amendment rights, (2) that Defendants violated two state criminal statutes, (3) that Defendants violated his due process rights, and (4) that Defendants retaliated against him in violation of his First Amendment rights, a claim also made in Plaintiff's Count IV. Count V presents yet another allegation of alleged retaliation against Plaintiff in violation of his Fist Amendment rights.

<u>Excessive Force</u>

Plaintiff alleges (1) that on October 26, 2005 Defendant Boyton was "subtly choking" him, (2) that Defendant Horsely sadistically and maliciously placed his knee in Plaintiff's back and Plaintiff's face, (3) that Defendants Bainbridge, Clark, Boyton, Smith, Monroe, Horsely, and Hammons allowed Defendant Boyton to "sadistically bend [P]laintiff's right hand and thumb causing extreme pain and busting the stitches in [P]laintiffsright [sic] thumb", and (4) that Defendants (unclear which Defendants he means) ripped his pants off and forced him to walk faster than the leg restraints permitted.

In cases dealing with prison security, the plaintiff must show that the prison guard acted with malicious and sadistic intent. Whitley v. Albert, 475 U.S. 312, 320-21 (1986)(where inmate plaintiff was shot by guard attempting to quell a prison riot). In Hudson v. Macmillan the Supreme Court

1   held that this standard applies equally to cases involving the use of force by prison guards outside

2   the riot context.  Hudson v. Macmillan, 503 U.S. 1 (1992) (where, after an argument with the

3   Plaintiff inmate, a prison guard kicked and punched the inmate while escorting him to a lockdown

4   area).  In determining whether a prison official has used excessive force in violation of an inmates's

5   constitutional rights, the core inquiry is whether the force was applied in a good-faith effort to

6   maintain or restore discipline, or maliciously and sadistically to cause harm.  Hudson, 503 U.S. at

7   7; Whitley, 475 U.S. at 320-21.  In making that determination, the court may evaluate factors such

8   as (1) the need for application of force, (2) the relationship between that need and the amount of

9   force used, (3) the threat reasonably perceived by the responsible officials, (4) any efforts made to

10   temper the severity of a forceful response, and (5) the extent of any injuries to the inmate.  Whitley,

11   475 U.S. at 321.

12        Defendants argue, and present evidence to the court in support of their argument, that

13   Plaintiff was resisting the escort and being unruly, when the events alleged above occurred. (Doc.

14   #15).  Plaintiff denies this in his affidavit.  (Doc. #22, affidavit of Anthony R. Boykin).  If what

15   Plaintiff alleges is true, then he has made out a claim of constitutional violation, and the law was

16   clearly established at that time such that no reasonable officer would in good faith think they were

17   permitted to choke and inmate, bend an inmate's hand and thumb in a sadistic manner, or rip an

18   inmate's clothes off where the inmate was not creating any disturbance. See Hudson, 503 U.S. 1.

19   Because the facts are in dispute, and Plaintiff denies that he was resisting the escort, the court cannot

20   determine whether the amount of force used was justified.  Thus, Defendants are not entitled to

21   qualified immunity.  Further, because material issues remain in dispute, the motion for summary

22   judgment (#15) should be DENIED as to the claims set forth in this section.

23   ///

24   ///

25   ///

26   ///

27   ///

28
                                                    10

State Criminal Statutes

Criminal statutes are not generally enforceable by a civil action. Collins v. Palczewski, 841 F.Supp. 333, 340 (D. Nev. 1993); United States v. Jourden, 193 F. 986 (9th Cir. 1912). In Collins the court explained its rationale for denying the inmate plaintiff a private right of action based on a criminal statute, NEV. REV. STAT. 197.200:

> Only in very limited circumstances have courts found private actions maintainable under criminal statutes. Without exception, the plaintiffs have been members of the public that the statutes were specifically designed to protect. [citations omitted]
> ...
> Furthermore, only proper prosecuting authorities may enforce violations of criminal statutes, not private parties. [citation omitted]. Indeed, N.R.S. § 169.055, which defines "criminal action," states that "[a] criminal action is prosecuted in the name of the State of Nevada, as plaintiff."

Collins, 841 F. Supp at 340. Further, a criminal prosecution is within the sole jurisdiction of the district attorney. See Cairns v. Sheriff, Clark County, 89 Nev. 113, 115, 508 P.2d 1015, 1016 (1973).

Here, Plaintiff's complaint asks for relief based on a Nevada state criminal statute. The court is not aware of any authority permitting Plaintiff to bring a civil action based on this statute. Plaintiff's claims under this section cannot be maintained because he is a private party attempting to enforce a purely criminal statute.

Defendants' motion for summary judgment on Plaintiff's claims under NEV. REV. STAT. 200.371 and 200.471 in Count III should be GRANTED.

First Amendment Retaliation

Plaintiff makes claims for First Amendment retaliation under several of his counts. The court addresses his allegations from Count V first. In Count V Plaintiff alleges that Defendants Brown, McDaniel, Endel, Brooks, Cox, Whorton, and Does 1-10 violated Plaintiff's right to due process by allegedly "stealing [P]laintiff's money" that he received from a settlement in another case in order to pay the public defender's office for the cost of defending Plaintiff. However, Plaintiff then alleges that these actions were done in retaliation for Plaintiff having filed a law suit. Regardless of his theory, Plaintiff's claims regarding the transfer are without merit. Evidence

11

presented by the Defense  shows that the funds were transferred pursuant to a court order, mandating Plaintiff to "pay the administrative fee of $25.00 for Count I ...to the White Pine County Clerk, Ely, Nevada [and to] repay White Pine County for the cost of counsel in the amount of $2700.00." (Doc. #15, Exh. G; see also Doc. #15, Exh. I, affidavit of Melanie Mason).  As such, Plaintiff cannot establish that Defendants McDaniel, Endel, Cox, Brooks, and Whorton transferred Plaintiff's funds for retaliatory reasons.  The motion for summary judgment should be <u>GRANTED</u> as to Count V.

In Count III Plaintiff alleges that Defendants used excessive force against him in retaliation for Plaintiff's grievances and lawsuits.

In Count IV Plaintiff alleges that Defendant Clark wrote a "notice of charges" against Plaintiff on November 22, 2005 Defendant Clark in retaliation for Plaintiff having threatened to sue the Defendants (though Plaintiff does not specify which Defendants he allegedly threatened to sue).

Inmates retain their first amendment rights, even within the expected conditions of confinement.  Hines v. Gomez, 108 F.3d 265, 270 (9th Cir. 1997).  It is well established that when prison officials retaliate against inmates for exercise of the inmate's first amendment rights, such as filing a grievance against a prison guard, the inmate has a claim cognizable under section 1983. Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994), see also Rhodes, 408 F.3d 559, 567 (9th Cir. 2005)(accepting this proposition and citing decisions of other circuits that accord).

In order to prove a claim of First Amendment retaliation, an inmate Plaintiff must (1) assert "that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68.   Further, in pursuing a claim of retaliation, "[t]he plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

12

1    Plaintiff has failed to plead or prove the absence of legitimate correctional goals or that his

2    rights were chilled or threatened by the alleged conduct.  Thus, Plaintiff's claims fails as a matter

3    of law.  The motion for summary judgment on these claims of retaliation, in both counts III and

4    IV should be <u>GRANTED</u>.

5    Here, it does not appear that the Defendants claim the defense of qualified immunity in

6    regards to the retaliation claims.

7    <u>Due Process Rights in a Disciplinary Hearing</u>

8    Count IV Plaintiff alleges that Defendant "Book" (though the court assumes he means

9    "Brooks") violated his due process rights by refusing to allow Plaintiff to question the witnesses

10   against him or to present evidence.

11   Under the Fourteenth Amendment, a state shall not deprive a person of life, liberty or

12   property without due process of law.  U.S. CONST. Amend. XIV.  Plaintiff must show that Defendants

13   deprived him of a liberty interest in violation or his right to due process.  McRorie v. Shimoda, 795

14   F.2d 780, 784 (9th Cir. 1997).  Although the guarantee of procedural due process may be claimed

15   by prisoners, prison officials need not afford prisoners with the "full panoply of rights due a

16   defendant" in a criminal proceeding.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  However,

17   when a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a

18   written statement at least twenty-four hours before the disciplinary hearing which includes the

19   charges, a description of the evidence against the prisoner, and an explanation for the disciplinary

20   action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling

21   witnesses would interfere with institutional security; and (3) legal assistance when the charges are

22   complex or the inmate is illiterate.  Id. at 563-70.  In addition, due process requires that there is at

23   least "some evidence" to support a prison disciplinary decision.  Id. At 555-56; Barnett v. Centoni,

24   31 F.3d 813, 815 (9th Cir. 1994).

25   Defendants argue that whether or not an inmate is entitled to call witnesses and present

26   evidence is purely a matter of institutional discretion and that Plaintiff misreads the significance

27   of Wolff.  Doc. #15, Doc. #24.  We disagree.  Wolff and later cases make clear that, where a liberty

28

13

1   interest is at stake, prison officials may only refuse to allow an inmate to call witnesses to be present

2   at his disciplinary hearing where there are special institutional safety concerns present. See, e.g.,

3   Wolff, 418 U.S. 539. Defendants do not argue that any such concerns were present regarding

4   Plaintiff's disciplinary hearing.

5       Although the right to call witnesses need not be unfettered, Serrano v. Francis, 345 F.3d

6   1071, 1079 (9th Cir. 2003), "a blanket denial of permission for an inmate to have witnesses

7   physically present during disciplinary hearings is impermissible." Mitchell v. Dupnik, 75 F.3d 517,

8   525 (9th Cir. 1997).

9       Defendants also argue that Plaintiff had no right to present evidence at his hearing because

10  the hearing did not result in the denial of a liberty interest. Doc. #15. However, they neglected

11  to provide support for this proposition. The court has undertaken its own review of the cases on

12  this subject, and concludes that such segregation does not necessarily implicate a liberty interest.

13  Sandin v. Conner, 515 U.S. 472, 486 (1995)(where disciplinary segregation did not implicate a

14  liberty interest because it was not significantly different from that plaintiff's normal conditions of

15  confinement). Determination of whether such punishment does constitute deprivation of a liberty

16  interest "requires a factual comparison between conditions in general population or administrative

17  segregation (whichever is applicable) and disciplinary segregation, examining the hardship caused

18  by prisoner's challenged action in relation to the basic condition of life as a prisoner." Jackson v.

19  Carey, 353 F.3d 750, 755 (9th Cir. 2003). Thus, while Defendants are correct that the mere loss of

20  privileges does not amount to the denial of a liberty interest, Wolff, 418 U.S. at 572, n.19,

21  disciplinary segregation might, depending on the circumstances. The court lacks sufficient evidence

22  to analyze this matter at this time as neither party has presented evidence regarding Plaintiff's

23  normal conditions of confinement as compared with the conditions imposed on him after the

24  disciplinary hearing.

25      Defendants argue that even if Plaintiff did have a liberty interest in this situation, they

26  complied with the Constitutional requirement by providing Plaintiff with advance written notice

27  of the charges and a written statement of the evidence relied upon. Doc. #15. Unfortunately for

28

14

Defendants those procedural safeguards are not the ones Plaintiff now complains were denied him in violation of his rights.  Plaintiff complains that he was denied witnesses and the opportunity to present evidence, not that he was denied the necessary notices.  Doc. #1.  Because the court lacks sufficient facts, the motion for summary judgment on Count IV should be <u>DENIED</u>.

RECOMMENDATION

IT IS THEREFORE RECOMMENDED that as to Defendant's Motion for Summary Judgment (Doc. #15) the District Judge enter an order (1) <u>GRANTING</u> the motion for summary judgment on Count I, (2) <u>DENYING</u>  the motion for summary judgment as to Plaintiff's Count III deliberate indifference claims, (3) <u>GRANTING</u> summary judgment on Count II, (4) <u>GRANTING</u>  summary judgment as to Plaintiff's deprivation of food claims from Count III, (5) <u>DENYING</u> summary judgment as to Plaintiff's excessive force claims, (6) <u>GRANTING</u> summary judgment on Plaintiff's claims under NEV. REV. STAT. 200.371 and 200.471 in Count III, (7) <u>GRANTING</u> the motion for summary judgment as to Count V (transfer of money to White Pine Count Public Defender), (8) <u>GRANTING</u> the motion for summary judgment on the claims of retaliation, in both counts III and IV, and (9) <u>DENYING</u> summary judgment on Count IV.  Plaintiff's Motion for Judgment on the pleadings (Doc. #22) should be <u>DENIED</u>.

The parties should be aware of the following:

1.    That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

/ / /
/ / /
/ / /
/ / /
/ / /

15

2.    That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED:   January 22, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

16